Konstantin **RUDENKO**; Rudenko Konstantin; Abdul Hakim, also known as Desmond Woodburn; Anthony Williams; Connie L. Johnson; Darrell Spencer; Norman Chang; Patrick Bannon; Ramon Alcantara; Dennis Gandarilla; Dennis Brown; Darren Collins; Miguel Miranda; Anthony DeFina; Victor Woodard, Petitioners–Appellants,

v.

Joseph J. **COSTELLO**, Supt.; Charles J. Hynes; Charles Greiner, Superintendent, Sing Sing Correctional Facility; Daniel A. Senkowski, Superintendent, Clinton Correctional Facility; John P. Keane, Supt.; Christopher Artuz, Superintendent; Commissioner of Correctional Services; James Stinson, Superintendent; Floyd Bennett; H.H. Albaugh, Supt.; Frank Irvin, Supt. of the Wende Correctional Facility, Respondents–Appellees.

Docket Nos. 99–2242 (L), 99–2248, 99–2266, 99–2276, 99–2277, 99–2304, 99–2309, 99–2340, 99–2387, 99–2423, 99–2466, 99–2497, 99–2524, 99–2531, 99–2692 and 99–2718.

United States Court of Appeals, Second Circuit.

Argued: June 7, 2001.

March 20, 2002.

Larry W. Yackle, Boston University School of Law, Boston, MA, (Perry S. Reich, Schapiro & Reich, Lindenhurst, NY, on the brief), for Petitioners–Appellants.

Amy Appelbaum, Assistant District Attorney, Kings County, Brooklyn, NY, (Charles J. Hynes, District Attorney for Kings County, Leonard Joblove, Victor Barall, Assistant District Attorneys,

Brooklyn, NY, Richard A. Brown, District Attorney for Queens County, John M. Castellano, Assistant District Attorney, Kew Gardens, NY, Eliot Spitzer, Attorney General for the State of New York, Valerie Singleton, Assistant Attorney General, New York, NY, on the brief), for Respondents–Appellees.

Before KEARSE, STRAUB, and SACK, Circuit Judges.

KEARSE, Circuit Judge.

The petitioners in these 16 consolidated appeals, who are New York State ("State") prisoners seeking vacatur of their convictions for various crimes, appeal from judgments entered in the United States District Court for the Eastern District of New York, denying their petitions for writs of habeas corpus under 28 U.S.C. § 2254. In most of these cases, the district judge to whom the action was assigned denied the petition in an order adopting, without elaboration, the reasons stated by the state appellate court in affirming the petitioner's conviction and the reasons proffered by the State in opposing the habeas petition. Granted limited certificates of appealability by this Court, petitioners contend that the district court's orders do not comply with federal law requiring that denials of habeas corpus petitions be accompanied by findings of fact and conclusions of law. The district judges who decided these cases have specially submitted to this Court their views that, *inter alia*, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, amending, *inter alia*, 28 U.S.C. §§ 2244, 2253, 2254, and 2255, and requiring that federal district courts considering habeas petitions by state prisoners give substantial deference to state-court rulings, *see* 28 U.S.C. § 2254(d)(1), made their adoptions of the state-court opinions particularly appropriate. For the reasons set forth below, we conclude that the orders do not contain explanations sufficient to permit meaningful appellate review, and we therefore remand for further clarification.

## I. BACKGROUND

These 16 appeals involve 14 petitioners who, in unrelated State prosecutions, were convicted of a variety of crimes, including murder (petitioners Darrell Spencer, Patrick Bannon, and Dennis Brown); attempted murder (petitioners Norman Chang and Abdul Hakim); manslaughter (petitioners Bannon and Anthony DeFina); assault (petitioners Hakim, Connie L. Johnson, Darren Collins, and Anthony Williams); narcotics offenses (petitioners Ramon Alcantara and Dennis Gandarilla); robbery (petitioners Collins, Williams, Miguel Miranda, and Victor Woodard); burglary (Woodard and petitioner Konstantin Rudenko) ("Rudenko"), who in one petition styles himself "Rudenko Konstantin" ("Konstantin"); and grand larceny (Konstantin). Each petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), which, for the most part, affirmed the convictions.

Following the affirmances of their convictions on direct appeal, and in some instances following denials of state-court applications for collateral relief, each petitioner filed in the District Court for the Eastern District of New York, during the period 1996–1999, at least one petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus vacating his convictions; Rudenko and Woodard each filed two such petitions. Each petition asserts a number of claims, including insufficiency of the evidence (Rudenko, Spencer, Chang, Bannon, Collins, Woodard (in *Woodard v. Senkowski*)); unknowing and involuntary entry of a plea of guilty and

undue delay in sentencing (Konstantin); violation of the privilege against self-incrimination (Hakim, Alcantara); denial of a fair trial because of prosecutorial misconduct (Chang, Brown, Miranda, DeFina); denial of a fair trial because of suggestive identification procedures (Spencer, Woodard (in *Woodard v. Senkowski*)); nondisclosure of exculpatory evidence (DeFina, Rudenko); denial of right to a public trial (Alcantara); denial of right to be present at hearings (Johnson, Alcantara, Woodard (in *Woodard v. Irvin*)); denial of right to confront witnesses (Hakim, Woodard (in *Woodard v. Irvin*)); and denial of the right to effective assistance of counsel (Johnson, Chang, Gandarilla, Miranda, Woodard (in *Woodard v. Irvin*)). The merits of petitioners' claims are not before us on the present appeals, given the limitation of the certificates of appealability to the procedural issue of whether the form of the district court's denials was proper.

## A. *The District Court's Denials of the Habeas Petitions*

The petitions of Gandarilla, Brown, and DeFina were assigned to Judge, now-Chief Judge, Edward R. Korman. The petitions in the other 13 cases were assigned to Judge David G. Trager. The petitions were denied in 1999 in the manner described below.

### 1. *The Petitions of Gandarilla and Brown*

The order of Judge Korman denying Gandarilla's habeas petition stated, *in toto*, as follows:

> The petition for a writ of habeas corpus is denied for the reasons stated in the opinion of the Appellate Division, *People v. Gandarilla*, 244 A.D.2d 500, 665 N.Y.S.2d 905 (2d Dep't 1997), and

the memorandum of law filed by the District Attorney.

*Gandarilla v. Artuz*, CV–99–508 (E.D.N.Y. dated June 14, 1999, filed June 24, 1999). Judge Korman denied Brown's habeas petition in a similar order:

> The petition for a writ of habeas corpus is denied for the reasons stated in the opinion of the Appellate Division, *People v. Brown*, 251 A.D.2d 341, 673 N.Y.S.2d 1012 (2d Dep't), and the memorandum of law filed by the District Attorney.

*Brown v. Senkowski*, CV–99–723 (E.D.N.Y. dated June 23, 1999, filed June 25, 1999).

### 2. *The Petition of DeFina*

Judge Korman denied the petition of DeFina in an order that stated as follows:

> The petition for a writ of habeas corpus is denied. I agree with the District Attorney that . petitioner procedurally forfeited the claims raised on the direct appeal to the Appellate Division, because his application for leave to appeal to the Court of Appeals merely enclosed the briefs filed in the Appellate Division without indicating the grounds upon which leave was sought. *See Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir.1991); *contra Meatley v. Artuz*, 886 F.Supp. 1009, 1013–1014 (E.D.N.Y.1995). In any event, the claims do not warrant habeas corpus relief for the reasons stated in the opinion of the Appellate Division, *People v. DeFina*, 256 A.D.2d 586, 682 N.Y.S.2d 878 (2d Dep't 1998), and the memorandum of law filed by the District Attorney.
>
> The issue raised in petitioner's collateral attack on the judgment of conviction is without merit for the reasons stated in the opinion of the Appellate Division. *People v. DeFina*, 256 A.D.2d 587, 685 N.Y.S.2d 249 (2d Dep't 1998).

*DeFina v. Albaugh,* 99 Civ. 5064 (E.D.N.Y. dated Oct. 27, 1999, filed Nov. 1, 1999) ("*DeFina v. Albaugh* ").

### 3. *The Petitions of Hakim, Spencer, Chang, Alcantara, Bannon, Miranda, Collins, Rudenko, and Konstantin*

Judge Trager denied nine of the present petitions in virtually identically worded orders. Seven of the orders differed only slightly in their paragraph breakage and punctuation, and in their citations to the respective petitioners' state-court appeals and the dates of the State's responses to the respective petitions. Those seven stated that the

> petition for a writ of habeas corpus is denied[] substantially for the reasons set out in the decision of the Appellate Division, *People v.* [the pertinent petitioner, citation], and the respondent's Memorandum of Law dated [date], submitted in opposition to the petition. In addition, petitioner's claims do not meet the standards required by 28 U.S.C. § 2254(d) for grant of the petition. None of the state's rulings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, it is hereby
>
> ORDERED that the petition for a writ of habeas corpus is dismissed. The Clerk of the Court is directed to close the case. A certificate of appealability will not issue since petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. The Clerk of the Court is directed to enter judgment and close the case.

*Hakim v. Greiner,* CV 97–6427 (E.D.N.Y. dated Apr. 20, 1999, filed Apr. 22, 1999); *Spencer v. Artuz,* CV–97–2355 (E.D.N.Y. dated Apr. 20, 1999, filed Apr. 22, 1999); *Chang v. Artuz,* CV–97–2344, (E.D.N.Y. dated May 3, 1999, filed May 5, 1999); *Alcantara v. Keane,* CV–97–1851 (E.D.N.Y. dated May 27, 1999, filed June 3, 1999); *Bannon v. Commissioner of Correctional Services,* CV–98–5559 (E.D.N.Y. dated June 8, 1999, filed June 9, 1999); *Miranda v. Bennett,* CV–99–0437 (E.D.N.Y. dated July 27, 1999, filed July 27, 1999); *Collins v. Stinson,* CV–99–0293 (E.D.N.Y. dated July 27, 1999, filed Aug. 3, 1999).

This form of order was also entered in both of Rudenko's cases, with the exception that the last sentence was omitted. *See Rudenko v. Costello,* CV–97–6362 (E.D.N.Y. dated Apr. 9, 1999, filed Apr. 14, 1999) (habeas challenge to burglary and grand larceny conviction); *Konstantin v. Hynes,* CV–98–1481 (E.D.N.Y. dated Apr. 9, 1999, filed Apr. 20, 1999) (habeas challenge to grand larceny conviction).

### 4. *The Petition of Williams*

Judge Trager denied the petition of Williams by order dated April 20. The *Williams* order differed slightly in format from those entered in *Hakim et al.,* discussed in the preceding section, in that its first paragraph stated that the petition was brought under 28 U.S.C. § 2254. It differed substantively in that it did not refer to a state-court opinion and adopted only the reasons stated in the State's memorandum in opposition to the habeas petition. *See Williams v. Senkowski,* CV–97–7050 (E.D.N.Y. dated Apr. 20, 1999, filed Apr. 22, 1999).

### 5. *The Petition of Johnson*

In an order dated March 29, Judge Trager denied the petition of Johnson,

adopting the State's arguments and the reasoning of several state-court decisions:

> The petition for a writ of habeas corpus is denied substantially for the reasons set out in the opinion of the Appellate Division affirming petitioner's conviction, *People v. Johnson*, 177 A.D.2d 711, 576 N.Y.S.2d 1015 (2d Dep't 1991), the memorandum decisions of the Supreme Court (1) dated June 30, 1989, denying one of petitioners § 440 motions, (2) dated January 31, 1990, denying petitioner's motion to reargue his § 440 motion, and (3) dated September 11, 1996, denying another of petitioner's § 440 motions (Kramer, J.), and respondent's Memorandum of Law dated January 12, 1998, submitted in opposition to the habeas petition.

> A certificate of appealability will not issue since petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. The Clerk of the Court is directed to enter judgment and close the case.

*Johnson v. Keane*, CV–97–5649 (E.D.N.Y dated Mar. 29, 1999, filed Mar. 30, 1999).

#### 6. *The Petitions of Woodard*

Judge Trager denied the two habeas petitions filed by Woodard by orders dated August 12, without adopting either the State's memorandum or a state-court opinion. In one order, the court stated:

> This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Petitioner's claims are dismissed alternatively because (1) they raise no federal claim, (2) they are procedurally barred because of petitioner's failure to raise them in a timely and proper manner in state court, or (3) they lack merit. Accordingly, it is hereby

> ORDERED that the petition for a writ of habeas corpus is denied. A certificate of appealability will not issue since petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. The Clerk of the Court is directed to enter judgment and close the case.

*Woodard v. Senkowski*, CV–97–3072 (E.D.N.Y. dated Aug. 12, 1999, filed Aug. 13, 1999).

The order denying Woodard's other petition was similar, but it added the observations that Woodard's claims had not been exhausted in state court, though it stated that the court would nonetheless reach the merits, and it stated that the claims were not reviewable under the habeas corpus statute:

> This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Although some of petitioner's claims are unexhausted, inasmuch as this court is able to review petitioner's unexhausted claims pursuant to 28 U.S.C. § 2254(b)(2), and rather than burden the state courts with further proceedings, the court will proceed to determine the merits of this petition.

> Petitioner's claims are dismissed alternatively because (1) they raise no federal claim, (2) they are not reviewable under the habeas corpus statute, (3) they are procedurally barred because of petitioner's failure to raise them in a timely and proper manner in state court, or (4) they lack merit.

*Woodard v. Irvin*, CV–96–1750 (E.D.N.Y. dated Aug. 12, 1999, filed Aug. 13, 1999).

### B. *The Certificates of Appealability*

Following the denials of their federal habeas petitions, each petitioner sought permission to appeal to this Court. By

orders dated May 4, 2000, in each case, we granted a certificate of appealability, consolidated the appeals, and appointed one counsel to address, for all of these petitioners, the following question:

> whether a district court may dismiss a 28 U.S.C. § 2254 petition without providing an order which indicates that the court conducted a thorough review and independent analysis of the petition.

C. *The Opposition of Judge Trager and Chief Judge Korman to This Court's Issuance of Certificates of Appealability*

Thereafter, in *Hakim v. Greiner*, Judge Trager issued a Memorandum dated August 10, 2000 ("Judge Trager Memorandum" or "Memorandum"), in response to this Court's issuance of certificates of appealability in the present cases, stating that

> [b]ecause the question certified in these cases suggests that decisions denying these petitions do not enjoy a presumption of regularity, to wit, that they were reached only after due consideration of all issues raised, I take this opportunity to apprise the Court of Appeals—in aid of its appellate jurisdiction—of my practice in deciding habeas corpus petitions.

(Judge Trager Memorandum at 1.)

> The practice that I have followed in deciding state habeas petitions since the Spring of 1999 is this: When all of the papers have been collected and the petition is ready for consideration, I *personally* review the petition, responding papers, any state court decisions, as well as the relevant parts of the record. If a case appears to have substantial merit, I appoint counsel (if the petitioner appears pro se). If I am uncertain about the merits of the case I ask my law clerk to take a closer look and prepare a memorandum before determining

whether to appoint counsel or to decide the case without doing so. If the case clearly appears to have no merit, I deny the petition summarily based upon my own personal and thorough review of the relevant parts of the record. Normally, when I do so I rely either on the opinion of the Appellate Division, if it contains a discussion of the relevant issue, or upon the discussion contained in the memorandum of law filed by the District Attorney or both. When the Appellate Division invokes its discretion, as the Second Circuit often does, to summarily dismiss some arguments as lacking sufficient merit to warrant discussion, the memorandum filed by the District Attorney often provides a more complete factual and legal context for those issues.

(*Id.* at 2, (emphasis in original).) Judge Trager added, "when I believe the case warrants it, I write a thorough, detailed opinion explaining my reasons for denying the writ." (*Id.; see id.* at 3, (citing five such opinions and one opinion granting the writ).) He continued:

> I feel particularly comfortable in employing this procedure for three reasons. First, the area of law is one in which I have developed a special expertise through nearly thirty years of teaching, practice, and judging. Second, the complexity of the procedural aspects of habeas law has been immeasurably increased with the passage of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), making the subject particularly difficult for law clerks, who serve only one year, to master. Third, and most importantly, it is precisely because I do not rely on law clerks that I feel that proceeding in this way is appropriate.

(Judge Trager's Memorandum at 3.)

Judge Trager stated that he had adopted this procedure in 1999 in part

because of the enormous increase in the number of habeas petitions by state prisoners since the enactment of AEDPA, along with an increase in the district court's civil caseload, including *pro se* civil rights cases. (*See id.* at 3–5.) He stated that "the practical effect of a ruling requiring any more than a statement that the petition has been thoroughly considered will result in substantial delays in deciding these habeas corpus cases—especially if more than a summary order is contemplated." (*Id.* at 5.)

In addition, in a section of his Memorandum joined by Chief Judge Korman, Judge Trager stated that he does "not believe it is appropriate, or within the power of the Court of Appeals, to instruct a district court judge that he or she may not summarily dispose of a case without any extended discussion." (*Id.*) He also stated that

[t]he question framed in the certificate of appealability appears to suggest that the lack of a detailed written opinion indicates a failure to conduct "a thorough review and independent analysis of the petition." Or, at least, that it is appropriate to question whether such an analysis took place. I do not believe that either suggestion is fair. On the contrary, the threshold issue here is whether a district judge should be able to incorporate by reference portions of the record or submissions by the parties that adequately apply the law to the facts of the case in reaching his or her determination, as opposed to simply rewriting significant parts of these papers.

Reliance on the reasons stated in the opinion of the Appellate Division as the basis for the denial of the writ hardly reflects the lack of "a thorough review and independent analysis of the petition." In fact, reliance on the Appellate Division decision, which, as a general

rule, is entitled to deferential rather than de novo review, 28 U.S.C. § 2254(d)(1), seems particularly appropriate. *See Pinkney v. Keane*, 920 F.2d 1090, 1098–99 (2d Cir.1990). . . .

(Judge Trager's Memorandum at 6.) Judge Trager likened his practice to that of this Court in some cases, in affirming summarily on the basis of the district court's reasoning:

[T]he Second Circuit often follows the practice of issuing summary orders, some published and some not published, affirming denials of habeas petitions based on the opinion of the district court. This practice is also followed in criminal and civil cases of all kinds. Does this practice—particularly in cases where the order is unpublished—reflect the absence of a thorough review and independent judgment?

Similarly, it is difficult to see why reliance on a well-drafted memorandum of law by the District Attorney reflects an absence of careful consideration. Only recently, in a summary order, a panel of the Second Circuit disposed of an appeal as follows:

Defendant Jose Pina appeals from the judgment entered in the district court, upon his plea of guilty, convicting him of conspiring, in violation of 18 U.S.C. § 371, to violate various sections of Title 21 concerning the proper handling, packaging and distribution of prescription medication, see 21 U.S.C. §§ 331(a)-(c), (k), (t); 333(a)(2), (b)(1)(D); 353(e)(2)(A).

We have considered whether we should vacate the defendant's plea because the conspiracy count of the indictment failed to charge a felony, and because this failure rendered the plea allocution defective. We find these arguments to be without merit.

*U.S. v. Aurora*, No. 98–1267, 2000 WL 979167, at *1 (2d Cir. July 13, 2000). This is an affirmance without any statement of explanation. It simply states a conclusory assertion that the arguments are without merit. Is such an order preferable to a statement pointing to the arguments set out in the memorandum of law filed by one of the parties?

I stop here, because I did not start to write a contentious brief-only to provide assurance that I *personally* "conducted a thorough review and independent analysis" before denying the thirteen petitions that have been consolidated for consideration of the issue certified. I have referred to the summary practice of the Court of Appeals only because I believe that district court judges should enjoy the same discretion in deciding meritless cases as the Court of Appeals enjoys. Those decisions should also enjoy the presumption that, however brief the stated reasons, the result reflects that the judge has given the matter appropriate personal consideration.

(Judge Trager's Memorandum at 7–8 (emphasis in original).)

Judge Trager stated that Chief Judge Korman had authorized him to state that the Chief Judge joined pages 5–8 of the Memorandum

because he believes that the appellate jurisdiction of the Second Circuit extends only to deciding whether or not the judgments denying the writ were legally correct, and not to instructing district court judges on how much discussion is required in a summary order. The latter issue is one addressed, if at all, to the Judicial Council of the Second Circuit.

(*Id.* at 8–9.)

In November 2000, this Court granted a limited certificate of appealability in *Clanton v. United States*, No. 00–2190, permitting a federal prisoner to appeal from the denial by Chief Judge Korman of a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, in order to present issues, similar to those raised here, as to the manner in which the § 2255 motion was denied. The *Clanton* certificate of appealability, in pertinent part, authorized appeal as to

whether the district court's one sentence dismissal of Clanton's 28 U.S.C. § 2255 motion "for the reasons stated in the letter/brief of the U.S. Attorney" complied with the requirements of § 2255, *see* 28 U.S.C. § 2255 ( ["t]he court shall ... determine the issues and make findings of fact and conclusions of law with respect thereto").

*Clanton v. United States*, No. 00–2190 (2d Cir. Nov. 1, 2000). Our certificate in *Clanton* noted that we had previously granted a certificate of appealability in *Rudenko v. Costello*, No. 99–2242(L).

On May 22, 2001, in connection with the present appeals, Judge Trager sent this Court a Memorandum he filed in *Rudenko v. Costello*, 97–CV–6362 (E.D.N.Y. May 22, 2001), attaching a copy of a Memorandum filed by Chief Judge Korman in *Clanton v. United States*, 99–CV–2626 (E.D.N.Y. Apr. 25, 2001), objecting to the issuance of these certificates of appealability. Chief Judge Korman's Memorandum stated the

view that there is no basis for concluding that the summary denial of the petition means that the judge "failed to conduct a reasoned method of inquiry into relevant questions of fact and law," *Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir.1992) (internal quotations and citation omitted),

(Chief Judge Korman's Memorandum dated April 25, 2001, at 1), and it argued that our certificate of appealability in *Clanton* had been improvidently granted:

I call attention to a recent Supreme Court holding that suggests that the Court of Appeals erroneously granted the certificate of appealability in this case because it failed to find as a threshold matter that the *underlying petition* made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c). *Slack v. McDaniel,* 529 U.S. 473, 483–90, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000),

(Chief Judge Korman's Memorandum dated April 25, 2001, at 1–2 (emphasis in original)). Judge Trager's May 22, 2001 Memorandum in *Rudenko v. Costello,* 97–CV–6362, suggested that the certificates of appealability in the present cases too had been erroneously granted in light of *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

## II. DISCUSSION

In these appeals, petitioners contend principally that the Federal Rules of Civil Procedure, as well as analogous legal principles, require that a district court, in dismissing a habeas petition, issue an order indicating that the court has conducted a thorough and independent analysis of the petition and containing an independent explanation of the district court's reasons for rejecting the petitioner's claims. Petitioners contend that the absence of such explanations prevents the losing party from making an intelligent assessment as to whether—and what issue or issues—to appeal and prevents the court of appeals from conducting effective review.

■ Although we do not go so far as petitioners do in demanding free-standing explanatory opinions from the district court, we conclude, for the reasons that follow, that the district courts are required to render decisions that are at least sufficiently informative to permit meaningful appellate review, and that the decisions in

these 16 cases do not meet that standard. We also conclude that the issuance of the limited certificates of appealability in these cases, in an effort to ensure that a meaningful decision can be made on petitioners' requests to appeal the merits of the district court's decisions, was not foreclosed by AEDPA.

### A. *The Review Function of the Courts of Appeals*

The principal business of most of the federal courts of appeals is the review of decisions of the district courts within their respective Circuits. Except in those rare areas in which the standard of review is entirely *de novo,* we cannot perform this function where the record is inadequate to reveal the basis for the district court's decision.

■ In most cases, we review a district court's findings of fact under a "clearly erroneous" standard. Under the Federal Rules of Civil Procedure, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...." Fed.R.Civ.P. 52(a). This standard is applicable to a district court's findings in federal habeas cases. *See, e.g.,* Fed.R.Civ.P. 81(a)(2) ("These rules are applicable to proceedings for ... habeas corpus ... to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions."); *Wade v. Mayo,* 334 U.S. 672, 683–84, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948); *Quesinberry v. Taylor,* 162 F.3d 273, 276 (4th Cir.1998) (findings by the district court in a habeas case are reviewed under the clearly-erroneous standard).

■ While the district court's findings of historical fact are reviewed for clear error, its decisions on matters of law such

as the voluntariness of a confession, *see, e.g., Miller v. Fenton,* 474 U.S. 104, 115–16, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), or the waiver of the right to counsel, *see, e.g., Brewer v. Williams,* 430 U.S. 387, 403–404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), are reviewed *de novo.* Decisions on mixed questions of fact and law, such as the materiality of facts known to the prosecution but undisclosed to an accused, *see Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Payne,* 63 F.3d 1200, 1209 (2d Cir.), *cert. denied,* 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996), or the constitutional adequacy of an attorney's representation of an accused, *see, e.g., Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), are likewise reviewed *de novo.*

■ Whether the district court's ultimate decision turns on factual determinations or on a choice between competing legal principles or on the manner in which the legal principles are applied to the facts, the district court must provide an indication of its rationale that is sufficient to permit meaningful appellate review. Plainly, in order to determine whether factual findings are clearly erroneous, we must be provided with findings. Even when an issue is to be reviewed by this Court *de novo,*

> that does not mean that it is our function to decide [the issue] in the first instance. We are dependent on the district court to identify and sort out the issues on ... motions [for dismissals as a matter of law], to examine and analyze them, and to apply the law to the facts accepted by the court for purposes of the motion. We are entitled to the benefit of the district court's judgment, which is always helpful and usually persuasive.

*Beckford v. Portuondo,* 234 F.3d 128, 130 (2d Cir.2000) (per curiam); *see also United States v. Marine Bancorporation, Inc.,* 418 U.S. 602, 616 n. 13, 94 S.Ct. 2856, 41 L.Ed.2d 978, (1974) ("if the District Court does not enter an opinion analyzing the relevant precedents in light of the record," or merely enters "skeletal conclusions of law," the reviewing court is "deprived of ... helpful guidance"). And even when the district courts

> have "wide discretion exercising their equitable powers," ... "discretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles.".... Thus, a decision calling for the exercise of judicial discretion "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review."

*United States v. Taylor,* 487 U.S. 326, 336, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (other internal quotation marks omitted)). Thus, we have noted that

> "abuse of discretion" is not the equivalent of "unreviewable". If we are to be satisfied that a district court has properly exercised its discretion, we must be informed by the record of why the district court acted as it did.

*In re Bolar Pharmaceutical Co. Securities Litigation,* 966 F.2d 731, 732 (2d Cir.1992) (per curiam).

■ Accordingly, although we will proceed with review of a district court's decision even where it lacks adequate findings "if we are able to discern enough solid facts from the record to permit us to render a decision," *Davis v. New York City Housing Authority,* 166 F.3d 432, 436 (2d Cir.1999), we, like other appellate courts, have remanded to the district court, in

both civil and criminal cases, and on all manner of issues, for further findings or for clarification when the record was insufficiently clear to permit us to determine the basis for the district court's decision. *See, e.g., Von Moltke v. Gillies,* 332 U.S. 708, 727, 730–31, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (vacating denial of habeas petition and remanding for the district court to "make explicit findings" on issues relating to petitioner's representation by counsel (majority opinion), where the answers could not be determined from the record itself and fathoming what the district judge concluded "[f]rom what he wrote ... would be the most tenuous guessing" (Frankfurter, J., concurring)); *Beckford v. Portuondo,* 234 F.3d at 129–30 (remanding for explanation of grant of summary judgment dismissing claims under 42 U.S.C. § 1983); *Davis v. New York City Housing Authority,* 166 F.3d at 437 (remanding for more explicit findings with respect to preliminary injunction in public-housing segregation case); *United States v. Stevens,* 985 F.2d 1175, 1189–90 (2d Cir.1993) (in challenge to application of the Sentencing Guidelines ("Guidelines"), vacating and remanding for findings or clarification as to, *inter alia,* the amount of heroin defendant was able to produce, defendant's role in the drug operation, and the basis for the court's departure from the Guidelines-recommended imprisonment range); *United States v. Santiago,* 906 F.2d 867, 873–74 (2d Cir.1990) (vacating in part and remanding for reconsideration where district court articulated an impermissible ground for denial of acceptance-of-responsibility reduction under the Guidelines, but mentioned a permissible ground without making it clear that the latter was an alternative basis for its denial); *Weitzman v. Stein,* 897 F.2d 653, 658–59 (2d Cir.1990) (vacating and remanding for findings with respect to party's assets and financial needs in connection with freeze order);

*Badgley v. Santacroce,* 815 F.2d 888, 889 (2d Cir.1987) (vacating and remanding for findings as to prison crowding "because the district court failed to set forth findings of fact and conclusions of law sufficient to permit appellate review"); *Fuchstadt v. United States,* 434 F.2d 367, 369–70 (2d Cir.1970) (remanding for findings as to plaintiff's damages in negligence action).

In *Beckford v. Portuondo,* for example, the district court's decision granting summary judgment dismissing the plaintiff's Eighth Amendment and due process claims "consisted of two sentences," as follows:

> "Upon review of the record and applicable law, the Court concludes that no genuine issue of material fact exists that precludes summary judgment, and that Plaintiff's claims are legally deficient. The Court notes that it does not reach the issue of Eleventh Amendment immunity or the applicability of *Kilcullen* at this stage, and relies on the alternate grounds articulated in Defendants' memorandum."

234 F.3d at 129 (quoting district court's decision). We concluded that the district court's explanation of its decision was "too spare to serve as a basis for our review." *Id.* at 130. We remanded to the district court "for further consideration and a complete and comprehensive decision," pointing out that

> [a] recitation of the applicable factors or legal standard, standing alone, is normally not sufficient to permit appropriate appellate review.... If the court fails to make findings and to give an explanation, and the reason for the court's ruling is not clear to us, we will remand for findings and an explanation.

*Id.* (internal quotation marks omitted).

Other Circuits have similarly sought clarification in the context of appeals from

the denial of habeas corpus. *See, e.g., Finley v. Drew*, 453 F.2d 1240, 1241 & n. 1 (3d Cir.1971) (per curiam) (remanding for findings of fact and conclusions of law where order granting habeas was too " 'cryptic[]' " to "apprise[ the court of appeals] of the reasons for the District Court's disposition"); *Tatem v. United States*, 275 F.2d 894, 896 (D.C.Cir.1960) ("It is ... imperative that denial either of leave to file the petition, or ... of the writ itself, be accompanied by an expression of the reasons for the denial either by informal memorandum, by recitals in an order, or by findings."); *Shinall v. Breazeale*, 404 F.2d 785, 787 (5th Cir.1968) (remanding where failure to state findings or reasons for denial of habeas prevented appellate court from determining whether an evidentiary hearing should have been held); *Whitley v. Miller*, 749 F.2d 634, 635 (11th Cir.1984) (per curiam) (remanding for "further proceedings, findings of fact and conclusions of law" where the "findings of the district court [we]re insufficient to enable [the court of appeals] to reach the merits"); *Tucker v. Howard*, 177 F.2d 494, 496 (7th Cir.1949) ("the judge in a habeas corpus proceeding[] should make and file findings of fact and conclusions of law"). *See generally* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2573, at 487–88 (1995) ("many courts of appeals have held that the district courts [in ruling on habeas petitions] must either make findings or otherwise give their reasons for their action"). *See also Sumner v. Mata*, 449 U.S. 539, 552, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("[n]o court reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief"); *Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 317, 60 S.Ct. 517, 84 L.Ed. 774 (1940) ("Moreover, if appellants conceived themselves aggrieved by the action of the court upon motion for preliminary injunction, they were entitled to have explicit findings of fact upon which the conclusion of the court was based. Such findings are obviously necessary to the intelligent and orderly presentation and proper disposition of an appeal.").

Specification of the grounds on which the district court denied a habeas petition would seem to be especially necessary where, as here, the petitioner is not represented by counsel. Without an explanation of the court's rationale, it hardly seems likely that these prisoners proceeding *pro se* would be able to make an intelligent decision as to whether—and as to what issues—to attempt an appeal, or to make any orderly presentation in support of appeal, given that the application of AEDPA is believed to be "particularly difficult" even "for law clerks, who serve ... one year, to master" (Judge Trager's Memorandum at 3).

■ In sum, we reject the view of Chief Judge Korman and Judge Trager that the federal courts of appeals have no authority to instruct the district courts to include in their rulings sufficient explanation to permit a meaningful evaluation of their decisions and meaningful appellate review.

Nor would we think it appropriate to fashion a standard of review that depended on such *ad hoc* matters as the particular professional or judicial experiences of the particular district judge who rendered a given decision, or to incorporate into the appellate review process an inquiry into whether, or to what extent, a judge relies on his or her law clerks. We do presume that the district judge has given each matter personal attention. What we do not presume, consistent with our own responsibilities, is the correctness of an unexplained decision rendered on a record that

is inadequate to reveal the decision's rationale.

We turn now to the questions of the degree to which AEDPA requires a district court to give deference to a state-court's decision and whether the district court's decisions in these 16 cases were properly deferential or sufficiently explicated.

### B. The Scope of AEDPA's Requirement of Deference to State Courts

As indicated in Parts I.A.1., 2., 3., and 5. above, in denying the habeas petitions in most of the cases before us, the district court stated in part that it was adopting, or substantially adopting, the reasons set out in the opinions of the Appellate Division. Judge Trager and Chief Judge Korman argue that reliance on the Appellate Division decisions seems "particularly appropriate" because under AEDPA, see 28 U.S.C. § 2254(d)(1), those decisions are entitled to deference. (Judge Trager's Memorandum at 6.) AEDPA's requirement that a federal habeas court accord a deferential level of review to a decision of the state court, while valid in certain circumstances, does not wholly apply here.

■ The pertinent statutory section, introduced by AEDPA in 1996, provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any *claim that was adjudicated on the merits* in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). By the terms of the statute, therefore, deference in the form of applying the "unreasonable application" test or the "unreasonable determination of the facts" test is due only with respect to an "adjudicat[ion] on the merits," not to a ruling that the petitioner failed to raise the issue in accordance with the state's rules of procedure. *See generally Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir.2001) ("*Sellan*").

The precise issue in *Sellan* was whether one could properly conclude that the state court had decided a federal constitutional claim on its merits, within the meaning of AEDPA's deferential standard, when that court had neither referred to federal law nor provided an explanation or discussion in its decision. We concluded the state court's statement simply that a claim of ineffective assistance of counsel was "denied" could be viewed as a ruling on the merits. *See Sellan*, 261 F.3d at 314. Exploring the meaning of adjudicated on the merits, we stated that

"[a]djudicated on the merits" has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground. *See, e.g., Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 1025, 149 L.Ed.2d 32 (2001) (noting one definition of an "on the merits" adjudication as "one that actually passes directly on the substance of a particular claim before the court") (internal quotation marks and alterations omitted).

*Sellan*, 261 F.3d at 311. *Accord Neal v. Puckett*, 239 F.3d 683, 686 (5th Cir.2001)

(defining "adjudication on the merits" to be a substantive, rather than a procedural, decision); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir.1999) (an "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim); *see also Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999) (per curiam) (given the "obvious procedural defect" of the petitioner's asserting the pertinent federal claim in the wrong state court, along with that court's "consistent practice of denying such improperly-filed petitions without considering the merits of the underlying claim," the state court's one-word denial of petitioner's federal claim was a procedural ruling, not a ruling on the merits, and thus, "the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply").

 In sum, in determining whether the state court has adjudicated a federal claim "on the merits," we inquire, *inter alia*, "whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Sellan*, 261 F.3d at 314 (internal quotation marks omitted). If it cannot be determined from the state-court opinion whether the denial of a given claim was based on a procedural ground rather than on the merits, no AEDPA deference is due the state-court decision on that claim. *See generally id.; Boyette v. Lefevre*, 246 F.3d 76, 89, 91 (2d Cir.2001); *id.* at 91 (court should review *de novo* rather than give AEDPA deference to state court on evidentiary determination where it was "impossible to discern the Appellate Division's conclusion on [the] issue.").

C. *The District–Court Orders in the Present Cases*

In denying 13 of the present habeas petitions (the exceptions being those filed by Williams and Woodard), the district court adopted the reasons stated in the opinions of the Appellate Division affirming petitioners' convictions. In addition, in each of those 13 plus the case of Williams, the court adopted the reasons set out in the State's memorandum of law submitted in opposition to the petition. For the reasons that follow, we conclude that these decisions, however thorough and independent the deliberations that led to them may have been, are not sufficient to allow meaningful appellate review. We note also that in some instances, the obscurity of the district court's ground of decision may have institutionally inappropriate consequences if the petitioner seeks to file a subsequent habeas petition.

1. *Adoptions of the State–Court Opinions*

Most of the Appellate Division decisions adopted by the district court, which apparently were accorded AEDPA deference, were not clearly determinations of the merits of all of the constitutional claims asserted in the present habeas petitions. Some of the claims that are at issue here were not mentioned in the Appellate Division opinions and may not even have been presented to that court. Other claims were packaged in a bulk dismissal of "other contentions" and were dismissed "either" on their merits "or" as procedurally barred, without specification of which claim fell into which category.

 For example, Rudenko, in his habeas petition challenging his convictions for burglary and grand larceny, asserts that he was tried before a biased jury panel, that the evidence was insufficient, that he was denied a fair trial because of the court's jury instructions, and that the prosecution should have been sanctioned for failing to disclose exculpatory evidence. In affirming his convictions, the Appellate Division discussed only the sufficiency-of-

the-evidence challenge and the sanctions point. It then said, "The defendant's remaining contentions lack merit *or are unpreserved for appellate review.*" *People v. Rudenko,* 240 A.D.2d 598, 599, · 659 N.Y.S.2d 987, 987 (2d Dep't 1997) (emphasis added). Such a formulation does not foreclose federal habeas review, *see Fama v. Commissioner,* 235 F.3d 804, 817 (2d Cir.2000) ("when a state court finds that claims are either procedurally barred or meritless, . . . they are amenable to federal review"), because it is not a clear statement of an independent state ground for the Appellate Division's rejection of the claim, *see id.* at 811; *see generally Coleman v. Thompson,* 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). But that formulation neither discloses the basis on which the Appellate Division might have found a particular claim barred by state law nor the basis on which that court might have found the claim meritless.

■ The Appellate Division decisions on which the district court relied in dismissing several of the other petitions were similar. Alcantara, in his habeas petition, asserts that he was denied the right to be present at a conference with the court, the right to a public trial, the right to present an entrapment defense, and the privilege against self-incrimination. In affirming his conviction, the Appellate Division discussed only the *in-absentia*-conference claim. Then it said, "The defendant's remaining contentions are *either unpreserved for appellate review or* without merit." *People v. Alcantara,* 226 A.D.2d 648, 649, 641 N.Y.S.2d 566, 566 (2d Dep't 1996) (emphasis added).

■ Miranda, in his habeas petition, asserts, *inter alia,* claims of denial of effective assistance of counsel and prosecutorial misconduct. The Appellate Division

affirmed his convictions without mentioning the latter claim. It then said, "The defendant's remaining contentions are *unpreserved for appellate review,* without merit, *or* do not require reversal." *People v. Miranda,* 243 A.D.2d 584, 585, 665 N.Y.S.2d 507, 508 (2d Dep't 1997) (emphases added).

■ Hakim, in his habeas petition, asserts, *inter alia,* claims that his rights to remain silent, to confront his accusers, and to be tried before an unbiased jury were violated, and that he received an illegal sentence. In affirming his convictions, the Appellate Division modified his sentence and expressly rejected his jury-bias claim. Then it said, "[t]he defendant's remaining contentions are *unpreserved for appellate review,* without merit, *or* do not warrant reversal." *People v. Hakim,* 234 A.D.2d 477, 478, 651 N.Y.S.2d 562, 563 (2d Dep't 1996) (emphases added).

■ Bannon, in his habeas petition, asserts claims that the trial court's exclusion of evidence denied him the right to present a defense, that the mid-trial dismissal of a juror violated his right to a proper jury trial, and that the evidence was insufficient to support his convictions. In affirming his convictions, the Appellate Division rejected his sufficiency-of-the-evidence challenge and a claim that his sentence was excessive. Then it said, "The defendant's remaining contentions are *either unpreserved for appellate review or* do not warrant reversal." *People v. Bannon,* 247 A.D.2d 626, 626, 668 N.Y.S.2d 489, 489 (2d Dep't 1998) (emphasis added)

■ Chang, in his habeas petition, asserts claims that the evidence was insufficient to convict him beyond a reasonable doubt, that he was denied effective assistance of counsel, and that he was denied a fair trial by reason of prosecutorial misconduct. In affirming his convictions, the

Appellate Division discussed and rejected the sufficiency-of-the-evidence and inadequacy-of-counsel claims. It then stated, "The defendant's various claims of prosecutorial misconduct were not raised at trial, and are all unpreserved for appellate review." *People v. Chang,* 129 A.D.2d 722, 722, 514 N.Y.S.2d 484, 485 (2d Dep't 1987). The court indicated that "certain" of those claims did not challenge conduct that was so egregious as to deny Chang a fair trial, and that one prosecutorial statement was error but was rendered harmless by the trial court's instructions, *id.* at 723, 514 N.Y.S.2d at 485–86. Accordingly, it appears that "certain" of Chang's claims of prosecutorial misconduct were decided on the merits by the Appellate Division but that others were not.

■ DeFina's habeas petition asserts claims (1) that he was denied a proper jury trial when the court dismissed one of the jurors, (2) that the prosecution failed to disclose exculpatory evidence, and (3) that he was denied a fair trial when the prosecutor referred to his mother as being involved in narcotics trafficking and his brother as having ties to organized crime. In affirming DeFina's conviction, the Appellate Division expressly dealt with only the first of these claims, stating that his "remaining contentions are *either unpreserved for appellate review,* without merit, *or,* to the extent that they relate to any actual error, do not warrant reversal." *People v. DeFina,* 256 A.D.2d 586, 587, 682 N.Y.S.2d 878, 879 (2d Dep't 1998) *("DeFina I ")* (emphasis added). DeFina also made a collateral attack on the second of these claims in a proceeding under N.Y.Crim. Proc. Law § 440.10, and the Appellate Division rejected that claim in a second opinion, *see People v. DeFina,* 256 A.D.2d 587, 685 N.Y.S.2d 249 (2d Dep't 1998) ("*DeFina II* ").

Neither *DeFina I* nor *DeFina II* expressly mentioned DeFina's claim that he was denied a fair trial because of the prosecutor's improper references to links between DeFina's close relatives and narcotics trafficking or organized crime. The State's response to DeFina's habeas petition indicates that the fair trial claim was raised only on his direct appeal of his conviction, not in the § 440.10 proceeding. To the extent that the fair trial claim was encompassed in the Appellate Division's phrase "remaining contentions" in *DeFina I,* that court's statement that the claim was "either" without merit "or" unpreserved or involved at most harmless error left unclear the Appellate Division's rationale for rejecting that claim.

Thus, in the present habeas petitions of Rudenko, Alcantara, Miranda, Hakim, Bannon, Chang, and DeFina, constitutional claims are asserted that, given the language used in the Appellate Division's opinions, may not have been dealt with by the Appellate Division on the merits. That court, as was its prerogative, *see Coleman v. Thompson,* 501 U.S. at 739, 111 S.Ct. 2546 ("we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim"), rejected in bulk undiscussed—and perhaps unlisted—claims by stating that they were "either" meritless "or" procedurally barred. Because the state court may not have decided these claims on their merits, no AEDPA deference by the district court on these claims was warranted. And because the district court adopted the Appellate Division's opinion *in toto,* that adoption leaves this Court uninformed as to the ground of the district court's decision. (*See also* Part II.C.2. below.)

■ Further, as to Konstantin, Johnson, Gandarilla, Brown, Collins, and Spencer, while the pertinent Appellate Division

opinion on its face indicates that all of the claims before that court were dealt with on their merits, the district court's adoption of those opinions is insufficient to resolve the habeas petitions because some of the claims asserted in these petitions evidently were not before the Appellate Division. For example, in response to the Konstantin petition, the affidavit of the Assistant District Attorney ("ADA") submitted by the State stated that Konstantin had presented to the Appellate Division five claims, to wit,

a) his waiver of appeal was not valid;

b) the trial court improperly failed to consider his motion to withdraw his guilty plea;

c) the trial court erred because it allegedly did not consider a presentencing report prior to sentencing;

d) the trial court did not have jurisdiction over him because of an allegedly unreasonable delay in sentencing, and

e) his guilty plea was not knowing and voluntary.

(Affidavit of ADA Amy Appelbaum dated June 16, 1998 ("Appelbaum Aff."), ¶ 8.) ADA Appelbaum stated that the Appellate Division "held that all of defendant's claims were without merit." (Appelbaum Aff. ¶ 9.) The Appellate Division decision, however, dealt with only four claims. First it expressly dealt with three claims, *i.e.,* those the ADA designated "b),'' "c),'' and "e),'' stating that the denial of Konstantin's motion to withdraw his plea was within the lower court's discretion since the bases for the motion were "facially without merit"; that no new presentencing report was required because the prior report was recent; and that Konstantin had "knowingly and voluntarily pleaded guilty in the presence of competent counsel after the court had advised him of the consequences of his plea during the plea allocu-

tion," *People v. Rudenko,* 243 A.D.2d 588, 588, 663 N.Y.S.2d 122, 123 (2d Dep't 1997). Then the court stated, "The defendant's remaining contention is without merit." *Id.* Plainly the court's reference to a remaining contention in the singular did not address both of the unidentified claims. Accordingly, the district court's adoption of the Appellate Division's opinion did not decide all of the claims asserted in Konstantin's petition.

■ In *People v. Johnson,* 177 A.D.2d 711, 712, 576 N.Y.S.2d 1015, 1015 (2d Dep't 1991), the Appellate Division identified several claims (the conduct of a conference in Johnson's absence, prosecutorial misconduct in the opening and summation, and the ruling that Johnson was a persistent felony offender) and decided each of those claims on its merits. But Johnson, in his habeas petition, asserts claims that were not mentioned in the Appellate Division decision, including claims that he was denied effective assistance of counsel, both at trial and on appeal, and that he was denied the right to present evidence in his own behalf at a sentencing hearing. Because the Appellate Division opinion neither mentioned these claims nor contained any wrap-up sentence referring to claims other than those with which it dealt expressly, there is no indication that the Appellate Division decided Johnson's claims of ineffective assistance of counsel or the right to present evidence at the sentencing hearing.

■ Similarly, Gandarilla, in his habeas petition, asserts claims that, *inter alia,* he was denied effective assistance of counsel at a hearing and when he entered his plea of guilty. In affirming his convictions, the Appellate Division stated that Gandarilla's challenge to a search warrant was "unpreserved for appellate review and, in any event, without merit." *People v. Gandarilla,* 244 A.D.2d 500, 501, 665

N.Y.S.2d 905, 905 (2d Dep't 1997). No mention was made of any other claim, and we cannot see that the present claim of ineffective assistance of counsel was decided by the state court.

■ In three other cases, the Appellate Division indicated that it adjudicated the merits of each of the contentions before it. *See People v. Brown*, 251 A.D.2d 341, 342, 673 N.Y.S.2d 1012, 1013 (2d Dep't 1998) ("The defendant's remaining contentions are not preserved for appellate review, *and*, in any event, are without merit") (emphasis added); *People v. Collins*, 249 A.D.2d 410, 410, 670 N.Y.S.2d 789, 790 (2d Dep't 1998) ("defendant's remaining contentions are without merit"); *People v. Spencer*, 188 A.D.2d 498, 499, 591 N.Y.S.2d 807, 808 (2d Dep't 1992) ("We have examined the defendant's remaining contentions and find them to be without merit. . . ."). However, these statements provide no assurance that all of the claims asserted in the present habeas petitions were before the Appellate Division on petitioners' direct appeals to that court. And, indeed, the likelihood that some were not is apparent from the State's submissions in response to the petitions, for its responses to nearly all of these 16 petitions include contentions that the petitioners did not exhaust all of their present claims. (*See, e.g.,* Unnotarized and otherwise undated June 1999 "Affidavit" of ADA Kathleen P. O'Leary ¶ 13) ("most of [Brown's] claims are either unexhausted or barred by an adequate and independent state procedural ground because the state appellate court found them unpreserved for appellate review"); State's *Collins* Memorandum at 1 ("The defendant did not exhaust his state remedies with respect to his claim that the evidence was legally insufficient to sustain his conviction for second-degree robbery."); State's *Spencer* Memorandum at 16 ("to the extent that this Court inter-

prets defendant's present claims as alleging that the trial court's errors deprived him of his constitutional right to due process, the claims are procedurally barred from this Court's review because defendant never presented such federal claims to any state court and thereby did not exhaust his state remedies with respect to these claims"); State's *Johnson* Memorandum at 15 (contending that Johnson had not exhausted his claim of denial of the right to present evidence); State's *Gandarilla* Memorandum at 1 ("Many of petitioner's claims have not been presented to New York's courts and have not, therefore, been exhausted. Because the petition contains unexhausted claims, it should be dismissed in its entirety.").

In sum, as to seven petitioners (Rudenko, Alcantara, Miranda, Hakim, Bannon, Chang, and DeFina), the Appellate Division opinions adopted by the district court were ambiguous as to whether the Appellate Division decided the merits of the claims before the Appellate Division, including certain of the present habeas claims. As to six others in whose direct appeals the Appellate Division either stated that the "remaining" contention or contentions were without merit (Konstantin, Brown, Collins, and Spencer), or gave no indication that there were any undiscussed contentions (Johnson and Gandarilla), the contentions raised in that court likely did not include all of the claims asserted in the district court. As to these 13 petitions, therefore, the district court's adoption of the opinions of the Appellate Division does not inform this Court (or the parties) of the reason or reasons for the district court's dismissal of all of the claims asserted in the habeas petitions.

2. *Adoptions of the State's Memoranda of Law*

■ With respect to the 13 petitions just discussed and the petition of Williams,

the district court also adopted the memorandum of law submitted by the State in opposition to the habeas petition. Although these memoranda provided far more detail than the Appellate Division opinions with respect to the events leading to petitioners' convictions and the proceedings in the various state courts, the district court's adoption of the memoranda presents several difficulties.

First, some of the State's arguments as to exhaustion, procedural bar, and the merits raised questions of fact as to which the court made no findings. For example, Miranda claims in his habeas petition that the state court denied him the right to represent himself at trial; his petition attached copies of pages from the brief submitted to the Appellate Division by his attorney, which stated that "defendant requested to represent himself." The State's memorandum to the district court, however, arguing the merits of this habeas claim, stated that "petitioner did not request to proceed *pro se* at any time...." (State's *Miranda* Memorandum at 14.) The district court made no finding that there had been no such request by Miranda, nor made any statement that findings on this question were unnecessary because the court relied on some other ground for dismissal.

In Alcantara's case, the State argued that his public trial claim was not exhausted because he failed to pursue it in his initial motion for leave to appeal the Appellate Division's decision to the New York Court of Appeals, raising it to the latter court for the first time in a motion for reconsideration of the denial of leave to appeal. (*See* State's *Alcantara* Memorandum at 13 ("those abandoned claims are unexhausted for purposes of habeas corpus review"; they can nonetheless be "deemed" exhausted and found procedurally barred).) In reply, Alcantara argued,

*inter alia*, that his public trial claim was in fact exhausted and not procedurally barred because " 'in order to preclude federal review the last State Court to render judgment must clearly and expressly state ... that its judgment rest[ed] on a State procedural bar.' " (Affidavit of Ramon Alcantara dated March 17, 1998, ¶ 6 (quoting *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997)).) Alcantara stated that the New York Court of Appeals had not stated that it was rejecting his motion for reconsideration on the ground that it was procedurally barred, and indeed that court gave the State an opportunity to respond to his motion. The district court made no finding as to the nature of the New York Court of Appeals' inquiry; nor did it specify whether it was dismissing Alcantara's public trial claim because that claim was unexhausted, procedurally barred, or lacked merit.

In the absence of findings by the district court on the factual issues raised by the State's responses to the petitions, we remain in the dark as to the basis for the court's decisions.

 Second, although the district court may have meant its adoption of the State's memoranda to serve as factual findings, it has long been held inappropriate for the court simply to adopt wholesale, without any identifiable input of its own, the proposed findings submitted by a party. *See, e.g., Anderson v. Bessemer City*, 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("We ... have criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record."); *United States v. Marine Bancorporation, Inc.*, 418 U.S. at 615 n. 13, 94 S.Ct. 2856; *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656–57 & n. 4, 84 S.Ct. 1044,

12 L.Ed.2d 12 (1964); *Counihan v. All-state Insurance Co.*, 194 F.3d 357, 363 (2d Cir.1999); *Philbrook v. Ansonia Board of Education,* 925 F.2d 47, 53 (2d Cir.1991). Although verbatim adoption is not necessarily fatal to appellate review where the record reveals the basis for the court's findings, the practice of

> "simply decid[ing] the case in favor of the plaintiff or the defendant, hav[ing] him prepare the findings of fact and conclusions of law and sign[ing] them .... has been denounced by every court of appeals save one. This is an abandonment of the duty and the trust that has been placed in the judge by th[e Federal Rules of Civil Procedure]...."

> "[District judges should] avoid as far as [they] possibly can simply signing what some lawyer puts under [their] nose[s]. These lawyers, and properly so, in their zeal and advocacy and their enthusiasm are going to state the case for their side in these findings as strongly as they possibly can. When these findings get to the courts of appeals they won't be worth the paper they are written on as far as assisting the court of appeals in determining why the judge decided the case."

*El Paso Gas Co.,* 376 U.S. at 657 n. 4, 84 S.Ct. 1044 (citation omitted).

Further, the "potential for overreaching and exaggeration on the part of attorneys," frequently exhibited when they are preparing findings of fact after learning that the judge has decided in their favor, *Anderson v. Bessemer City,* 470 U.S. at 572, 105 S.Ct. 1504, poses an even greater problem in the circumstances here, where the court has simply ordered the respondent to show cause why a habeas petition should not be granted. The issues have not been circumscribed by the court's announcement of any ruling, and the attorneys are generally inclined to include every argument that has occurred to them as a possible reason for the court to rule in their client's favor, no matter how frail. Thus, here, the State's memoranda in response to nearly all of the 16 petitions argued each of the most common reasons for rejecting a habeas petition, contending (a) that a given claim was not a federal claim, (b) that some or all of the petitioner's habeas claims were not exhausted in state court, (c) that those claims are now procedurally barred from further pursuit in state court and thus should be deemed exhausted, (d) that the petitioner had not shown cause for or prejudice resulting from the procedural default, and (e) that the petitioner's claims lacked merit. In most of its responses, the State added that if there was any error it was harmless. Sometimes these arguments were stated as conjuncts, sometimes as disjuncts. But whatever their form, we doubt that all of the contentions are of equal strength in each of the 14 cases in which the district court adopted the State's memorandum.

Indeed, Judge Trager and Chief Judge Korman state that "a district judge should be able to incorporate by reference *portions* of the record" or "significant *parts* " of the State's submissions "that adequately apply the law to the facts of the case in reaching his or her determination." (Judge Trager's Memorandum at 6 (emphasis ours).) If in fact the court had limited its adoption to specified "portions" of the State's memoranda of law, its decisions would likely have been informative. For example, in *Clanton v. United States,* 284 F.3d 420 (2d Cir.2002), decided today, we found the district court's order denying a § 2255 claim sufficiently informative both because it relied on specific pages of the government's response to the motion and because it stated an additional ground. We concluded that that specificity discloses a rationale that can meaningfully be

reviewed. But the district court's adoptions of the State's memorandum of law in their entirety, without any indication of which argument or arguments the court found persuasive as to any given claim (as occurred with respect to 13 of the above 14 petitions, the exception being that of DeFina), provide virtually no assistance to this Court in the performance of our reviewing function.

■ In denying the petition of DeFina, the district court did elaborate on its adoption of the State's memorandum of law. In addition to stating that "the claims do not warrant habeas corpus relief for the reasons stated in the opinion of the Appellate Division, [*DeFina I*], and the memorandum of law filed by the District Attorney," *DeFina v. Albaugh*, the district court stated:

> I agree with the District Attorney that petitioner procedurally forfeited the claims raised on the direct appeal to the Appellate Division, because his application for leave to appeal to the Court of Appeals merely enclosed the briefs filed in the Appellate Division without indicating the grounds upon which leave was sought. *See Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir.1991); *contra Meatley v. Artuz*, 886 F.Supp. 1009, 1013–1014 (E.D.N.Y.1995).

*DeFina v. Albaugh*. While this explanation is informative, the court's holding is not supported by the cases cited. In *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991), we held that a letter applying for leave to appeal to the New York Court of Appeals was insufficient to raise two claims; in that case, however, the defendant's Appellate Division brief had argued three claims; his letter seeking leave to appeal appended that brief, but the letter itself mentioned only one of those claims. Thus, we concluded that the letter could easily have been construed as impliedly eschewing fur-

ther review of the other two claims. Here, DeFina's letter applying for leave to appeal to the New York Court of Appeals attached the briefs submitted to the Appellate Division, as well as that court's rulings; however, unlike the letter submitted by the defendant in *Grey v. Hoke*, DeFina's letter did not single out any claim. We have not held that an application that merely attaches the defendant's prior brief and does not single out a claim is insufficient to seek review of all of the claims in the New York Court of Appeals. *See generally Jordan v. LeFevre*, 206 F.3d 196, 199 (2d Cir.2000); *Morgan v. Bennett*, 204 F.3d 360, 370–71 (2d Cir.) (concluding that letter attaching briefs and asking for review of "all issues outlined in defendant-appellant's brief and *pro se* supplemental brief" sufficed to seek review of all such issues), *cert. denied*, 531 U.S. 819, 121 S.Ct. 59, 148 L.Ed.2d 26 (2000). And at least one district-court case, as perhaps indicated by the *DeFina* district court's use of the "*contra*" signal in citing *Meatley v. Artuz*, holds that a submission such as that made by DeFina is sufficient.

Thus, although the district court's order denying the petition of DeFina is more informative than the other orders, the reason specified by the district court appears to be an unsound ground for the denial. However, because the district court added that "in any event" the court found the petition "not to warrant habeas corpus relief" for the reasons stated in the state-court opinions and the State's memorandum of law, and because those multipronged state-court and State statements left matters opaque, we conclude that DeFina's case, like the others, should be remanded for the district court to explain the grounds of its denial.

### 3. The Adoptions' Implications for Subsequent Habeas Petitions

A final difficulty in the district court's wholesale adoption of the State's memo-

randa is that it creates a serious adjudicative problem with respect to any future habeas filings by these petitioners, for in response to nearly all of these petitions, one of the State's contentions was that some of the claims were not exhausted (*see, e.g.,* State's *Gandarilla* Memorandum at 1 ("Many of defendant's claims have not . . . been exhausted. *Because the petition contains unexhausted claims, it should be dismissed in its entirety.*" (emphasis added))). The wholesale adoption of a memorandum that includes exhaustion as one of several potential grounds for dismissal creates difficulties because AEDPA requires certain determinations that depend on the court of appeals' knowledge of whether the district court has dismissed the petition on the ground of exhaustion.

AEDPA provides that a habeas petitioner must obtain authorization from the court of appeals in order to file in the district court a "second or successive" habeas petition. 28 U.S.C. § 2244(b)(3)(A); *see also Liriano v. United States,* 95 F.3d 119, 123 (2d Cir.1996) (upon receipt of a second or successive petition, a district judge transfers the petition to the court of appeals for a determination of whether the petition may be filed). Further, with respect to any second or successive petition, AEDPA requires the dismissal of a claim if it was presented in a prior application, *see id.* § 2244(b)(1), and requires the dismissal of even a claim not asserted in a prior petition if the petitioner does not make certain showings as to the claim's factual predicates or the applicable law, *see id.* § 2244(b)(2).

 While these requirements would plainly be applicable to a petition filed after the dismissal of a habeas petition on its merits, or to one filed after a dismissal on the ground of procedural default, *see, e.g., Carter v. United States,* 150 F.3d 202, 205–06 (2d Cir.1998) ("a denial on grounds of procedural default constitutes a disposition on the merits and thus renders a subsequent § 2254 petition or § 2255 motion 'second or successive' for purposes of the AEDPA"), they do not apply if the prior petition was dismissed on the ground of failure to exhaust state remedies. The Supreme Court held in *Slack* that "[a] habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition." 529 U.S. at 485–86, 120 S.Ct. 1595; *see also Camarano v. Irvin,* 98 F.3d 44, 47 (2d Cir.1996) (per curiam) (same); *cf. Villanueva v. United States,* No. 00–3580 (2d Cir. to be argued) (raising the question of whether a § 2255 motion, filed after a prior motion was properly dismissed as untimely, should be deemed a second or successive motion).

In responding to nearly all of the present petitions, the State argued, *inter alia,* that some of the claims were not exhausted. In dismissing most of those petitions, the district court adopted the State's memorandum of law. If any of these petitions was dismissed on exhaustion grounds, the present dismissal would not bar that petitioner's right to file a future habeas petition. In the absence of any indication by the district court as to which of the arguments in the State's memorandum of law the court found persuasive, however, a district judge presented with a future habeas petition will be hard-pressed to know whether to forward it to this Court to allow the petitioner to request authorization for filing, or whether the district judge may proceed to adjudicate the matter without the need for such authorization. This Court, if it receives a motion for leave to file, will face a similar dilemma and will likely remand for a determination by a district judge as to the grounds of the prior dismissal, *see, e.g., Carter v. United*

*States*, 150 F.3d at 205 ("we have remanded to the district court for a determination of whether a proposed motion or petition is indeed 'second or successive' when it was unclear ... whether the prior habeas petition was dismissed on the merits"). The district judge on such a remand will then be forced to attempt a reasoned finding by resort to a record that is ambiguous, or perhaps by soliciting an interpretation from the judge who denied the petition (assuming that judge is still on the Bench), who may have little independent recollection of which of the many alternatives formed the basis for his opinion. The potential in any individual case for the need to guess at the reason for a habeas denial would obviously be reduced if the district court simply gives a contemporaneous explanation of the grounds of its denial. The potential for a proliferation of cases that will entail such guesswork inheres in a routine practice of adopting (a) state-court opinions that may or may not have decided the merits of a given claim and/or (b) responding papers that proffer alternative grounds for denial, some of which do not address the merits.

In discussing an older version of § 2244 dealing with successive petitions, the Court of Appeals for the Seventh Circuit noted that

> considering the ... provision, 28 U.S.C.A. § 2244 [1948], that a judge shall not be required to entertain an application for a writ of habeas corpus if it appears that the legality of such detention has been determined by a judge or a court of the United States on a prior application for such a writ and the petition presents no new ground not theretofore presented, *it is more important than ever before that the court make findings of fact and state its conclusions of law, so that another judge or court before whom a petition is pending may know definitely what grounds for relief have been theretofore considered.*

*Tucker v. Howard*, 177 F.2d at 496–97 (emphasis added). The importance of findings of fact and conclusions of law takes on even greater importance today, given that the applicability of several AEDPA restrictions may depend on the ground of the district court's decision.

In sum, the district court's wholesale adoption of the memoranda of law submitted by the State not only does not clarify the basis for the court's decisions but also will serve in some instances to add to the ambiguity and to create inappropriate uncertainty for future proceedings.

### 4. *The Denials of Woodard's Petitions*

In ruling on the two petitions filed by Woodard, the district court did not rely on either the Appellate Division opinions or the responses filed by the State. Rather, the court stated several alternative grounds for denying Woodard's claims, though it did not specify which of the several alternatives it believed applicable to which claims.

In *Woodard v. Senkowski*, the habeas petition alleges that Woodard was the victim of a suggestive identification procedure, that the evidence was insufficient to support his convictions, and that the state trial court lacked jurisdiction over his case. In denying the petition, the district court stated that "[p]etitioner's claims are dismissed alternatively because (1) they raise no federal claim, (2) they are procedurally barred because of petitioner's failure to raise them in a timely and proper manner in state court, or (3) they lack merit." *Woodard v. Senkowski*, CV–97–3072 (E.D.N.Y. dated Aug. 12, 1999, filed Aug. 13, 1999). The district court's statement of three alternative grounds for dismissing three claims creates nine potential issues for appellate review. The court

provided no explanation as to why it believed any of these alternatives would be applicable to which of Woodard's claims. There were no findings of fact and no definitive conclusions of law. As we noted in *Beckford v. Portuondo,* a recitation of the legal standard, standing alone, is normally insufficient to permit appropriate appellate review. 234 F.3d at 130.

■ In *Woodard v. Irvin,* which involved three other claims, to wit, ineffective assistance of counsel on appeal, denial of the constitutional right to confront witnesses against Woodard at a preliminary parole revocation hearing, and denial of the constitutional right to attend the final parole revocation hearing, the district court made somewhat inconsistent statements as to its approach. Initially the court stated that "some of petitioner's claims are unexhausted"; but it stated that, as permitted by AEDPA, "the court will proceed to determine the merits of this petition." *Woodard v. Irvin,* CV–96–1750 (E.D.N.Y. dated Aug. 12, 1999, filed Aug. 13, 1999). However, the court apparently did not decide all of the asserted claims on their merits, for in the next paragraph it ruled that "[p]etitioner's claims are dismissed *alternatively* because (1) they raise no federal claim, (2) they are not reviewable under the habeas corpus statute, (3) they are procedurally barred because of petitioner's failure to raise them in a timely and proper manner in state court, *or* (4) they lack merit." *Id.* (emphasis added). In the absence of any indication by the district court as to which of its four alternative grounds applied to which of Woodard's three claims, there are potentially 12 issues for appellate review. Again, the court provided no factual findings, and it gave no explanation as to why it believed any one or more of its four alternatives should be applied to any of Woodard's claims.

It is of course beyond cavil that a claim may have multiple flaws. And if the district court finds that to be true, it is entirely appropriate for the dismissal to cite multiple grounds. But for the court to state that a claim has one of several flaws, without specifying which flaw, is of little help. We regard the *Woodward* decisions too as inadequate to permit appropriate appellate review.

### D. Slack *on Certificates of Appealability*

■ Finally, we reject the contention of Chief Judge Korman and Judge Trager that, under *Slack v. McDaniel,* this Court could not properly issue even the present limited certificates of appealability in any of these cases unless we found that the pertinent petitioner had made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c). Although the "substantial showing" standard would apply where the district court rejected the petitioner's claims on their merits, we conclude that it was not applicable at this stage of the case, where the district court had not disclosed whether it rejected any given claim on the merits or instead rejected the claim solely on procedural grounds. In *Slack,* the Court stated that

> [w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find *the district court's assessment of the constitutional claims debatable or wrong.* The issue becomes somewhat more complicated where ... the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at

least, that jurists of reason would find it debatable whether the petition *states a valid claim* of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel,* 529 U.S. at 484, 120 S.Ct. 1595 (emphases added).

In the present cases, we cannot answer the question whether "the district court's assessment of the constitutional claims [is] debatable or wrong" because we cannot tell whether the court even made such an assessment, rather than dismissing on procedural grounds. It is clear, however, that each of these petitions states at least one valid federal constitutional claim. *See generally Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (pleading of *pro se* litigant is to be construed liberally). Thus, one of the *Slack* questions to be answered where the district court has dismissed the petition on procedural grounds must be answered favorably to these petitioners. Nor can we tell, assuming that the district court dismissed a petition on procedural grounds, which of the procedural grounds proffered by the State the district court selected.

In sum, until we are informed of the basis for the district court's decision, we cannot conduct the inquiry required by *Slack* as to whether a certificate of appealability should be granted to allow a habeas petitioner to pursue the merits of a given claim on appeal. In *Slack,* the Supreme Court rejected the respondent's argument that the certificate-of-appealability requirement makes a habeas petition's dismissal on procedural grounds simply unappealable, stating that

[u]nder [such a] view, a state prisoner who can demonstrate he was convicted in violation of the Constitution and who can demonstrate that the district court

was wrong to dismiss the petition on procedural grounds would be denied relief. We reject this interpretation. The writ of habeas corpus plays a vital role in protecting constitutional rights. *In setting forth the preconditions for issuance of a COA under § 2253(c), Congress expressed no intention to allow trial court procedural error to bar vindication of substantial constitutional rights on appeal.*

*Slack,* 529 U.S. at 483, 120 S.Ct. 1595 (emphasis added). Just as the *Slack* Court found no indication that Congress meant to allow a trial-court procedural error to prevent review when the petitioner has stated a constitutional claim, we see no indication that, when such a claim has been stated, Congress meant to preclude review because the district court has rendered its decision in a manner that leaves unclear the basis for its decision.

■ In sum, we think it plain that, just as this Court has authority to remand a case to the district court for findings and explanations sufficient to permit meaningful appellate review, we have the authority to require that the district court give an explanation sufficient to permit this Court to make a meaningful decision on whether the petitioner is even entitled to appellate review.

## CONCLUSION

■ We have considered all of the arguments presented to us in support of the manner in which the district court rendered its decisions and in opposition to the issuance of certificates of appealability to consider the manner of decision, and we have found those arguments to be unpersuasive. For the reasons discussed above, we conclude that the district court's wholesale adoptions of (a) the Appellate Division's ambiguous opinions, (b) the State's multi-alternative memoranda of law in op-

position to the present habeas petitions, and/or (c) a boilerplate roster of possible legal grounds for rejecting habeas petitions provides an inadequate and inappropriate basis for meaningful determination of whether a certificate of appealability should issue, for a meaningful determination of whether a later habeas petition may be filed without judicial permission, and ultimately for meaningful appellate review.

We accordingly remand to the district court for clarification, in each case, of the ground or grounds on which the court rejected each asserted claim.

We note that these cases were consolidated only for the present limited appeal. Following the district court's entry of its clarification in a given case on remand, a new request for a certificate of appealability may be made by that petitioner, and such a request will be calendared in that case in the ordinary course of this Court's business.